# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**PRO TECH MONITORING, INC.,**

    Plaintiff,

v.                                      Case No. 8:08-cv-1455-T-30AEP

**SATELLITE TRACKING OF PEOPLE, LLC,**

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Satellite Tracking of People, LLC's Motion for Summary Judgement of Non-Infringement (Dkt. 44) and Plaintiff Pro Tech Monitoring, Inc.'s Response in Opposition to the motion (Dkt. 64). On December 10, 2009, a hearing was held on the issues of claim construction and infringement. The Court, having considered the motion, response, exhibits, and being otherwise advised in the premises, concludes that the motion should be denied.

## Background

Plaintiff Pro Tech Monitoring, Inc. ("Pro Tech") brought this action against Satellite Tracking of People, LLC ("STOP") for one count of patent infringement. The patent at issue is United States Patent 6,014,080 ("the '080 patent"), entitled *Body Worn Active and Passive Tracking Device*. The '080 patent describes and claims a tamper resistant body worn tracking device integrated with a wireless communications system and central database to

monitor the location and status of the tracking device. There is no dispute that the '080 patent is valid and enforceable.

The allegedly infringing device consists of STOP's trademarked BlueTag body worn tracking device and integrated Veritracks central data base. In its motion for summary judgment, STOP contends that if the claims of the '080 patent are properly construed, the BlueTag and Veritracks system does not infringe upon the '080 patent.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions,

answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Chelates, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49. This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a question for the fact finder. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

**Discussion**

An infringement analysis is a two step process. Cybor Corp. v. Fas Techs., 138 F.3d 1448, 1454 (Fed. Cir. 1998). The first step is the claim construction, followed by a comparison of the allegedly infringing product to the construed claims. Id.

**I.     Claim Construction**

Claim construction is a question of law for the Court. Markman v. Westview Instruments, 517 U.S. 370, 372 (U.S. 1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). In most

circumstances, the words of a claim are to be given their ordinary and customary meaning as one skilled in the art would understand them. Id. at 1312-1313. Claim construction also requires the Court to look at the claims in the context of the patent as a whole, including the specification. Id. at 1315. "The specification is [] the primary basis for construing the claims." Id. (citing Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985)).

In addition to the patent language itself, the Court may consider other intrinsic and extrinsic evidence. Id. at 1317. Intrinsic evidence consists of descriptions of the prior art and the prosecution history of the patent within the Patent and Trademark Office ("PTO"). Id. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Id. (citing Markman at 980). While intrinsic evidence is more significant than extrinsic evidence, both may be considered when necessary. Id.

### A. Overview of the Prior Art

The products at issue allow for the monitoring and tracking the location of people, particularly criminal offenders. Early in the evolution of monitoring systems, electronic monitoring was only available at fixed locations, such as an offender's residence. These house arrest systems involved two pieces: a body worn piece that would transmit a signal to the second piece, a receiver located in the offender's residence. The receiver, which had to be plugged into an electrical outlet, communicated with a central database over a standard phone line.

Following the fixed location monitoring systems, new systems were invented that allowed for improved location determinations beyond the offender's residence. These new systems were also two piece devices. As in the old system, a wireless transmitter was worn on the body. This body-worn piece ran on low power and could stay on the offender for extended periods of time without recharging or replacing the battery. The second piece, an associated tamper resistant portable tracking apparatus, had to be carried by the offender. The portable tracking piece contained high power consumption devices, such as the processor and memory, and required periodic recharging.

In both of these prior art systems, the body-worn piece would transmit a signal only to the tracking piece. The tracking piece would then send information regarding the offender's location or status to the central database. The central database in turn communicates with the offender's supervising agency, law enforcement agency, and victim.

The invention described by the '080 patent combines the two pieces from the earlier tracking systems into a single tamper resistant body-worn device. The claims at issue here are Claim 1(d), "means to replace the battery," and Claim 11, "directly from the body-worn tracking device to remote associated notification devices."

**B.     Claim 1(d): "means to replace the battery"**

The parties agree that Claim 1(d) is a means-plus-function claim and, therefore, should be construed under 35 U.S.C. §112, para. 6. A patent may describe an element of a claim as a means or step for performing a function, rather than describing the structure used in performing that function. 35 U.S.C. §112, para 6. The claim "shall be construed to cover

the corresponding structure, material, or acts described in the specification and equivalents thereof." Id. The Court must first determine the claimed function, then identify the structure that corresponds to that function as disclosed in the specification. Applied Med. Res. Corp. v. United States Surgical Corp., 448 F.3d 1324, 1332 (Fed. Cir. 2006).

The function of Claim 1(d) is to replace the battery. The specification describes replacing the battery as follows: "[a] rechargeable and replaceable battery 48 is retained within compartment 24 by a battery cover 16, held in place by tamper resistant screws 18 as is known in the art." The parties disagree whether a separate compartment, which holds only the battery, is a necessary structure for the function of replacing the battery. The Court finds that it is not. The claimed function is "to replace the battery," not to hold the battery in place or something else. A separate compartment for the battery alone does not assist in performing the identified function. The structure that functions as a means to replace the battery is the cover sealing the case, held in place by tamper resistant screws or the equivalent. Therefore, the Court adopts Pro Tech's construction of Claim 1(d); a means to replace the battery is construed as a compartment for retaining the battery with a cover for the compartment held in place by screws, or the equivalent thereof.

**C.    Claim 11: "directly from the body-worn tracking device to remote associated notification devices"**

While Claim 1 describes what the invention is, Claim 11 describes what the invention does. In simple terms, the purpose of the monitoring device is to send information regarding the location of the offender wearing the device to the intended recipients, such as law

enforcement and victims. The two terms of the most concern are "directly" and "remote associated notification devices."

STOP argues that Claim 11 should be construed to mean that a signal gets sent from the tracking device to the intended recipient without first going through the central database. STOP's proposed construction would also exclude the central database as a remote associated notification device. This construction, however, is inconsistent with the context of the patent as a whole.

Consideration of the prior art is especially important in construing Claim 11. As discussed in detail above, prior tracking devices were two piece designs; a body worn piece and a tracking piece either based in the home or carried by the offender. The body worn piece sent a signal to the tracking piece, which then sent a signal to the remote associated notification devices either going through the central database or without going through the central database.

The change from the prior art to the '080 patent is the combination of the earlier two piece devices into a one piece all body-worn device. The pathway of the signal has only changed in that the signal in the '080 patent is sent from the body-worn device to remote associated devices, including the central database, without going through a second carried tracking piece. In this context, it becomes clear that "directly" means without passing through a second piece carried by the offender.

The next question is whether the central database is a "remote associated notification device." Claim 7 of the '080 patent enumerates the group of remote associated devices. This

group includes "victim devices, central database, supervisory agency, and law enforcement." '080 Patent, column 9, lines 48-49. STOP argues that the central database is not a remote associated *notification* device because the "patent carefully avoids calling the central data base a 'notification device.'" (Dkt. 44, at p. 17)

STOP's argument is hyper-technical. In addition to the list of remote associated devices given in Claim 7, the specification also includes the central database among the list of notification devices. The specification claims the "body-worn tracking devices transmits rule violations...to the supervising agency's notification device 132,150, the law enforcement agency's notification device 132, 164, the central database system 132, 128, 148, 152, and the victim's notification device." '080 Patent at column 8, lines 17-25. This statement is the same as saying that notifications of rule violations are sent to the listed devices. The patent clearly intended for these devices to receive the notices of rule violations, which, in plain English, makes all of these devices, including the central database, notification devices. Therefore, Claim 11 is construed to mean sending signals directly from the starting point of the body-worn tracking device in a pathway with a destination of remote associated notification devices, which includes the central database.

## II.     Infringement Analysis

The second step of the infringement analysis is a comparison of the allegedly infringing device to the properly construed claim. Cybor Corp. at 1454. The infringement analysis is a question of fact. Applied Med. at 1332. A plaintiff may seek to prove literal infringement or infringement under the doctrine of equivalents. "To establish literal

infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." TechSearch L.L.C. v. Intel Corp., 286 F.3d 1360, 1371 (Fed. Cir. 2002). Similarly, under the doctrine of equivalents, the accused product must contain the equivalent of all elements of the claim. Wavetronix v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1360 (Fed. Cir. 2009) (citing Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997)). The elements are equivalent if the differences between the two are insubstantial. Id. Equivalence must be proven on a limitation-by-limitation basis. Id.

**A.   Claim 1(d)**

"Infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." Applied Med. Res. Corp. v. United States Surgical Corp., 448 F.3d 1324, 1333 (Fed. Cir. 2006) (citing Lockheed Martin Corp. v. Space Sys./Loral, Inc., 324 F.3d 1308, 1320 (Fed. Cir. 2003)). The Court must identify the relevant structure in the accused device and then apply the function-way-result test in order to determine structural equivalence between the accused device and the disclosed device. Id. at 1333-1334. To prove infringement, a plaintiff must prove that the structure in the accused device performs the identical function in substantially the same way, with substantially the same result. Id.

Because STOP is seeking a judgment of non-infringement, the burden is on STOP to prove that the undisputed facts show that the BlueTag device cannot infringe. As it relates to Claim 1(d), STOP must show that the relevant structure in the BlueTag device is not

equivalent in that it does not perform the identical function of providing a means to replace the battery or that function is not achieved in substantially the same way with substantially the same result.

The function of replacing the battery in the disclosed device is achieved through the use of a compartment which holds the battery with a cover held in place by screws, or the equivalent. The BlueTag device has a case which holds the battery comprised of a bottom and a cover piece held together with glue. Whether this structure is equivalent remains a disputed issue of fact. It appears that the two devices perform the identical function of providing a means to replace the battery. Both devices are battery operated and have two piece compartments that hold the battery in place. Whether this function is achieved in substantially the same way with substantially the same result is left for the fact finder to determine.[1]

**B.      Claim 11**

STOP argues that the BlueTag and Veritracks system does not infringe upon the '080 patent because the BlueTag device communicates only with the Veritracks central database. In STOP's system, the signal is sent from the one-piece BlueTag device only to the Veritracks central database. The Veritracks database then sends communications out to the intended recipients, such as victims and law enforcement.

---

[1] STOP argues that the BlueTag device cannot infringe because the battery cannot be accessed without destruction of the case. There is no such limitation in the '080 patent.

As the Court has established, a central database is included as a remote associated notification device under the '080 patent. The pathway of a signal from the body-worn device to a central database is protected under the Court's construction of Claim 11. A reasonable fact finder could determine that the communication between the BlueTag device and the Veritracks central database infringes upon Claim 11 of the '080 patent.

**Conclusion**

With the disputed claims of the '080 patent properly construed, the Court cannot grant summary judgment of non-infringement on either claim. The issue of whether STOP's BlueTag and Veritracks system infringes upon the '080 patent remains for trial.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment of Non-Infringement (Dkt. 44) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on January 4, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2008\08-cv-1455.msj 44.frm